UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | | |
|---|---|---|
| Mr. Eric J. MAPES | § | |
| Plaintiff(s) | § | Case No.: 7:18-CV-170 |
| V. | § | |
| THE STATE OF TEXAS | § | |
| Defendant(s) | § | |
| | § | |

## MOTION REQUESTING INTERVENTION
## AND APPOINTMENT OF COUNSEL

Now comes the Plaintiff, Mr. Eric J. MAPES, and requests Intervention and for this Court to grant this request and move to intervene into the above referenced matter to protect the disabled Plaintiff's significant rights and liberty interests at stake in bringing this request. This "REQUEST " is made in support and the very subject of the attached 'COMPLAINT" under and filed by a DISABLED PRO SE party as courtesy without counsel , this understanding and agreement by both parties is this binding legal disclosure that does relate and is legally valid in these proceedings and enforcement of rights for the Plaintiff , " In legal terminology to the Plaintiffs' understanding he files ALL documents in reservation of all his rights and protections under the law, a complaint is any formal legal document that sets out the facts and legal reasons (see: cause of action) that the filing party or parties (the plaintiff(s)) believes are sufficient to support a claim against the party or parties against whom the claim is brought (the defendant(s)) that entitles ..."

### 1. *BRIEF HISTORY AND LEGAL DISCUSSION*

   *1).* The writ of habeas corpus is a right guaranteed by the United States Constitution and the Texas Constitution. Article I, Section 12 of the Texas Constitution states: A The writ of habeas corpus is a writ of right, and shall never be suspended. It is uncertain why the Texas Court of Criminal Appeals would deny that writ, in 2015 , in light of Y's claim for/of "factual innocence" by allowing non-tribunal employees to make that legal determinations regarding the matter and interfering with the right to be heard. The Legislature shall enact laws to render the remedy speedy and effectual, and it is still an uncertainty as to why the Court of Criminal Appeals didn't honor that right. [See also Ex parte Thompson , 273 S.W.3d 177, 181 (Tex. Crim. App. 2008) (Texas Constitution Article 5, Section 5(c) gives the Court of Criminal Appeals broad grant of original habeas corpus jurisdiction).] Y filed a writ on his own behalf since Y hasn't been able to hire nor find counsel, acquire legal services throughout a

variety of settings none were willing to help, and this includes many legal services of States and bars attorney referral services, Innocence Projects, ACLUs, etc., etc. They all gave a standardized response after a long period of wait" that they were either understaffed, under funded, too large of case load, and even they hadn't the time. This apathetic attitude and personal animus used to deny legal counsel for a criminal and post criminal matter is shown further infringement and a constitutional deprivation The ADA doers require these entities(Courts) even including these private and non-profit organizations and groups to show in their denial of services how it would create an undue burden .... as well as other places similar covered both under Title II( title II and the Federal Rehabilitation Act) and Title III. It is uncertain how the Texas Court of Criminal Appeals would state to Y that a "wrongful felony conviction" , covered by this Constitutional right, would be negated by the aforementioned Court and various entities and government throughout the State and claim it is a Civil matter and deny counsel to assist in light of other ADA protections that continue to be negated. The writ applies to all unlawful confinement or restraint. [ "Restraint" is defined as "the kind of control which one person exercises over another, not to confine him within certain limits, but to subject him to the general authority and power of the person claiming such right." TEX.CODE CRIM. PROC. art. 11.22. And "[t]he words 'confined', 'imprisoned', ' in custody', ' confinement', ' imprisonment', refer not only to the actual, corporeal and forcible ] TEX . CODE CRIM . PROC . art. 11.23. "The Court of Criminal Appeals, the District Courts, the County Courts, or any Judge of said Courts, have power to issue the writ of habeas corpus; and it is their duty, upon proper motion, to grant the writ under the rules prescribed by law." A waiver is not be enforceable as to any claims that the applicant could not have known about, with the exercise of due diligence, at the time of the waiver without effective counsel. Ex parte Reedy, 282 S.W.3d at 494. Since at no time did the attorney hired by Y provide any materials regarding the case and nearing time of trial and then recused himself leaving Y had to move forward empty handed and with none of his case documents.

2). The Original Court acting for X then appointed a public defender shortly out of law school with no time to prepare a proper defense. Y is a disabled individual and has been , and the supporting medical records that go back to early childhood and has affected him throughout his entire life and will for the rest ... it is uncertain how being placed in fear to take a deal by witnessing other people not taking deals and receiving the max punishments would be an admission of guilt when no proper defense was provided for Y in light of the evidence. Due to the duress and ineffective counsel, false pleas are especially difficult to overturn on appeal without counsel because one of the legal consequences of a guilty plea is waiving the right to appeal the very errors that might have led a defendant to decide that pleading guilty was his best or only option when counsel didn't help. Y's plea was involuntary and uninformed while in fear and under great duress. Y has established that he did not cause or bring about his prosecution by reason of his own misconduct;" such misconduct "would include falsely giving an uncoerced confession of guilt, removing evidence, attempting to induce a witness to give false testimony, attempting to suppress testimony, . . . concealing the guilt of another," and even "plead[ing] guilty."Judicial review has provided at best an incomplete remedy for individuals convicted of crimes they did not commit. In addition to the various obstacles to relief examined , the fundamental reason that judicial review has failed so many of the wrongfully convicted(TEXAS is well know for this) is that it was not designed to help them. Judicial review corrects process errors, not factual inaccuracy. A judicial order vacating a conviction is at most a step along the way to exoneration; it does not itself establish innocence. It has been seen that a key barrier to appellate relief for the wrongfully convicted is the inability of appellate judges to consider any evidence other than what is already in the trial record. In the original court records it shows Y has established that he did not cause or bring about his prosecution by reason of his own misconduct;" such misconduct "would include falsely giving an uncoerced confession of guilt, removing evidence, attempting to induce a witness to give false testimony, attempting to suppress testimony, . . . concealing the guilt of another," and even

"plead[ing] guilty."Judicial review has provided at best an incomplete remedy for individuals convicted of crimes they did not commit. Since at no time did the attorney hired by Y during that time provide any materials regarding the case and nearing time of trial recused himself, and Y had to move forward with a forced public defender with no time to prepare a proper defense. Y is a disabled individual and has records that go back to early childhood tht also show hearing loss and aid required to hear at the age of 2... it is uncertain how being placed in fear to take a deal by witnessing other people not taking deals and receiving the max punishment due to the duress and ineffective counsel( See U.S. CONST . amend. VI; see, e.g., Strickland v. Washington, 466 U.S. 6 68 (1984). But see Jeffrey Kirchmeier, Drink, Drunks, and Drowsiness: The Constitutional Right to Ef fective Assistance of Counsel and the Strickland Prejudice Requirement, 75 N EB . L. R EV . 425 (1996). .

   3). False pleas are especially difficult to overturn on appeal without an attorney because one of the legal consequences of a guilty plea is waiving the right to appeal the very errors that might have led a defendant to decide that pleading guilty was his best or only option. "Official Texas Records":... **(a)** Date arrested :12/21/1998 , **(b)** Date of offense: 12/19/1998( Same day of another mans crime for the same victim with the same forensics used against Y. Have all the necessary court[Cause No. C-27,445] and medical/forensic records affirming this ) , **(c)** Place: State of Texas Ector County , **(c)** Date Registry Began: 12-20-2000 , **(d)** Case No. : C-27, 442 (Texas Penal Code 22.011(a)(1) , **(e)** Date Convicted: 11-08-1999 , **(f)** Sentence: 2yrs and served 2 years , **(g)** Date of Release: 12-19-2000 .

   4). Y continues to show a preponderance of the evidence used against him since the same forensics where used ,showing one person with black hair, on a prior conviction involving the same vitcim same date with another assailant. Cause No. C- 27,445 ; also see Ex parte Thomas, 906 S.W.2d 22, 24 (Tex. Crim. App. 1995);Ex parte Rains, 555 S.W.2d 478, 481 (Tex. Crim. App. 1976); Ex parte McPherson, 32 S.W.3d 860, 861 (Tex. Crim. App. 2000). But see Ex parte Elizondo, 205 947 S.W.2d 202, 209 (Tex. Crim. App. 1996).

   5). Y has asserted the original prosecution has yet to prove guilt beyond a reasonable doubt(See Texas Penal Code Title 1 Chpt. 2 Sec. 2.01) regarding a wrongful conviction and continues to show "factual innocence" ( See, e.g., Coffin v. United States, 156 U.S. 432, 453 (1895) ("The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law.").which may be brought up in any State jurisdiction since it shows a Constitutional deprivation and infringement. All the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Jackson, 443 U.S. at 319; Matlock, 392 S.W.3d at 667. This standard recognizes "the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319; see also Adames v. State, 353 S.W.3d 854, 860 (Tex. Crim.App. 2011).

   6). Since a false confession was extracted through coercive means while, Y a disabled man, was under duress doesn't justify the conviction neither "The forensics" and other conviction before his(5-10-1999, "Cause No. C- 27,445") of the same crime/time/victim do support the veracity of his factual innocence. It is shown in Cause No. C-27,445 where the forensics where used before Y was convicted or before a forced and coerced by the prosecution to make deals/confessions . How may a Prosecutor use a forensics report showing "one assailant with black hair" permitted to convict two people? In context of this wrongful prosecution , a Brady violation is shown and has come about as a result of negligence by the prosecutor where the due process was not upheld.. Y has continued to show an intentional wrong doing and a deliberate indifference.

   7). It is found in title IV—INNOCENCE PROTECTION ACT OF 2004 Sec. 401. Short title.[[Page 118 STAT. 2261]] Subtitle A—Exonerating the innocent through DNA/Forensic testing Sec.411.

Federal post-conviction DNA testing.) No DNA was taken until after my conviction in light of the supporting forensics shown the one assailant having "black hair". The fundamental miscarriage of justice exception is shown in support of 'factual innocence.' (See House v. Bell,126 S. Ct. 2064, 165 L. Ed. 2D 1, 23 A.L. $R. Fed. 2D 633(U.S. 2006) The only time DNA was taken for this matter was after Y was in the custody of TDCJ on the John Middleton Unit in Abilene Texas and even at that time was told by the Captain running the admin. Bldg for the unit Y was in fact innocent.

**8).** Since these actions created against Y continue to cause further unwanted emotional distress and harm to an innocent disabled person ( Shaumber v. Henderson , 579 N.E.2d 452, 456 (Ind. 1991) and stress( backed by valid Medical Disability records and Medical findings and studies:, a person commits aggravated assault if he intentionally, knowingly, or recklessly causes serious bodily injury to another. TEX . PENAL CODE ANN . §§ 22.01(a)(1), 22.02(a)(1) (West 2011 & Supp. 2014). "Serious bodily injury" is bodily injury that "creates a substantial risk of death or that causes death, serious permanent disfigurement, or ;"protracted loss or impairment" of the function of any bodily member or organ." TEX . PENAL CODE ANN . § 1.07(a)(46) (West Supp. 2014). "Bodily injury" is defined as "physical pain, illness, or any impairment of physical condition." Id. § 1.07(a)(8).) to a disabled person it supports the inhumane treatment already shown since Y continues to initiate contact regarding valid concerns.

**9).** It is not difficult to perceive the harm that Title II and Title III of the Americans with disabilities act is designed to address. The historical experience that Title II reflects is also documented in the United States Supreme Court's cases, which have identified unconstitutional treatment of disabled persons by state agencies and also places of public accommodation working with a State in a variety of settings. Notably, these decisions also demonstrate a pattern of unconstitutional treatment in the administration of justice. Found pursuant to the ADA Title II and Title III (access and fair services) is a valid abrogation of the 11th Amendment (Tennessee v. Lane, 541 U.S. 509 (2004)) and even Access to the courts shown being a fundamental right and constitutionally valid. See Tennessee v. Lane, 541 U.S. 509, 522,524,529, 531,534(2004). Since this matter also allows false records to still be produced against Y it does support further valid legal concerns , since the Defendant(s) ( A part and seat of the Government of the United States) has chosen to produce and made a false representation on legal governmental records records against Y and has continued to allow and encourage/aid(18 U.S.C. 2) other parties and States to do the same causing this libelous/slanderous defamation and deprivation of rights.(18 U.S.C. 1001(a)(1),(2),(3) ; 18 U.S.C. 241 ; 18 U.S.C. 242)

**10).** Individuals with mental disabilities are uniquely vulnerable to making false confessions under police interrogation, prompting a cavalcade of devastating consequences for both the individual confessors and the cause of justice. A growing body of evidence shows that mental disabilities impair the ability of sufferers to withstand the pressures of interrogation, as well as understand and invoke their Constitutional rights during questioning. Most current reform efforts focus on piecemeal legislation on the State level, such as mandatory electronic recording of interrogations. This Discussion argues that Title II of the Americans with Disabilities Act provides an existing, nationwide framework for meaningful protection. Title II requires all public entities, including law enforcement agencies, to reasonably modify their activities in order to prevent discrimination against persons with disabilities. This establishes that Title II generally applies to interrogation of the mentally disabled and proposes evidence-based options for reasonable modification of interrogation practices to reduce the risk of false confessions. The Americans with Disabilities Act [ADA] as a Safeguard, .... courts have applied the law to interrogations of the mentally disabled. It is uncertain why this harm and ongoing abuse would be allow when laws protect disabled individuals from being taken advantage of and abused. Y can't help the fact he had a tumor like cyst in his head at the age of 2 and reconstructive surgery perform,,ed at that time to live a life with mental disorders, hearing loss and a speech disorder.... Though Mr. Y can and has helped better himself to understanding the wrong done unto him and the rights he has, as

well as protections of the law.

11). It is uncertain how even entities today use the same very disorders and attacks to trigger a disability and create an exacerbation. The Federal laws clearly states knowing or unknowingly these still no excuse in the mannerisms Y and his family has had to incur and are still having to incur. It is appalling how a disabled person would continue to be attacked for exercising his rights ( "Liberty" ) and establishing complaints(. Liberty is a "natural" and "unalienable" right that you cannot surrender, sell or transfer since they are a gift from the Creator to the individual and cannot under any circumstances be surrendered or taken.(Liberty Deff.: Freedom; exemption from extraneous control. The power of the will, in its moral freedom, to follow the dictates of its unrestricted choice, and to direct the external acts of the individual without restraint, coercion, or control from other persons. See Booth v. Illinois, 1S4 U. S. 425, 22 Sup. Ct. 425 ; source of dictionary meaning and reference Blacks Law Dictionary).   "The constitutional prohibition against 'double jeopardy' was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense. . . .

12). The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty."[ Green v. United States, 355 U.S. 184, 187–88 (1957). The passage is often quoted with approval by the Court. E.g., Crist v. Bretz, 437 U.S. 28, 35 (1978); United States v. DiFrancesco, 449 U.S. 117, 127–28 (1980); Yeager v. United States, 557 U.S. ___, No. 08–67, slip op. at 7 (2009). For a comprehensive effort to assess the purposes of application of the clause, see Westen & Drubel, Toward a General Theory of Double Jeopardy, 1978 Sup. Ct. Rev. 81.*]* A second "vitally important interest[ ]" embodied in the Double Jeopardy Clause "is the preservation of 'the finality of judgments.'"[Yeager v. United States, 557 U.S. ___, No. 08–67, slip op. at 6, 7 (2009), quoting Crist v. Bretz, 437 U.S. 28, 33 (1978)] Throughout most of its history, this clause was binding only against the Federal Government. In Palko v. Connecticut,[ See 302 U.S. 319 (1937)] the Court rejected an argument that the Fourteenth Amendment incorporated all the provisions of the first eight Amendments as limitations on the states and enunciated the due process theory under which most of those Amendments do now apply to the states. Some guarantees in the Bill of Rights, Justice Cardozo wrote, were so fundamental that they are "of the very essence of the scheme of ordered liberty" and "neither liberty nor justice would exist if they were sacrificed."[See 302 U.S. at 325, 326.] The clause speaks of being put in "jeopardy of life or limb," which as derived from the common law, generally referred to the possibility of capital punishment upon conviction, but it is now settled that the clause protects with regard "to every indictment or information charging a party with a known and defined crime or misdemeanor, whether at the common law or by statute."[ See Ex parte Lange, 85 U.S. (18 Wall.) 163, 169 (1874). The clause generally has no application in noncriminal proceedings. Helvering v. Mitchell, 303 U.S. 391 (1938)]

13). Despite the clause's literal language, it can apply as well to sanctions that are civil in form if they clearly are applied in a manner that constitutes "punishment."[ The clause applies in juvenile court proceedings that are formally civil. Breed v. Jones, 421 U.S. 519 (1975). See also United States v. One Assortment of 89 Firearms, 465 U.S. 354 (1984); United States v. Halper, 490 U.S. 435 (1989) (civil penalty under the False Claims Act constitutes punishment if it is overwhelmingly disproportionate to compensating the government for its loss, and if it can be explained only as serving retributive or deterrent purposes); Montana Dep't of Revenue v. Kurth Ranch, 511 U.S. 767 (1994) (tax on possession of illegal drugs, "to be collected only after any state or federal fines or forfeitures have been satisfied," constitutes punishment for purposes of double jeopardy). But see Seling v. Young, 531 U.S.

250 (2001) (a statute that has been held to be civil and not criminal in nature cannot be deemed punitive "as applied" to a single individual). The issue of whether a law is civil or punitive in nature is essentially the same for ex post facto and for double jeopardy analysis. 531 U.S. at 263.]

**14).** Ordinarily, however, civil in rem forfeiture proceedings may not be considered punitive for purposes of double jeopardy analysis. and the same is true of civil commitment following expiration of a prison term, in which Y doesn't fall under category. To some, the fact that a person is exonerated – even after serving years on death row or otherwise in prison or jail – is evidence of the fact that the "system" works. A just government cannot wrongfully deprive its citizens of life, liberty or property without compensation. Statutes governing compensation for wrongfully imprisoned individuals have been enacted by 24 states, the District of Columbia, and the federal government . These concepts have their underpinnings in Blackstone's thoughtfully calculated ratio: "Better that ten guilty persons escape than that one innocent suffer." 4 WILLIAM BLACKSTONE,COMMENTARIES 356;see also F. VOLTAIRE, ZADIG, ch. 6 (1747) ("It is better to risk saving a guilty person than to condemn an innocent man) In re Winship, 397 U.S. 358, 372 (1970) (Harlan, J., concurring) ("[I]t is far worse to convict an innocent man than to let a guilty man go free.").

## 2. *ARGUMENT*

**1.)** Powell v. Alabama, The Court found that that the defendants' constitutional rights were violated based on the Fourteenth Amendment's Due Process Clause. In the opinion, Justice George Sutherland wrote that the right to counsel is so fundamental and important that the right to a fair trial is meaningless without assistance of counsel.[Supra note 4. ]  In the landmark 1963 decision, Gideon v. Wainwright, the Court ruled that federal and state courts must provide counsel for those indigent defendants who cannot afford to hire their own. The Court reasoned that the guarantee of counsel is so fundamental to a fair trial that it must be applied to the states through the Fourteenth Amendment's Due Process Clause and a person denied the right to counsel, even if that's merely a function of inability to pay, violates this right.[Gideon v. Wainwright, 372 U.S. 335, (1963).] A criminal defendant has the right to assistance from a lawyer at almost every important phase of the criminal process, from arrest and initial investigation all the way through an appeal after conviction.[Justin Rand, "Pro Se Paternalism: The Contractual, Practical, and Behavioral Cases for Automatic Reversal," 163 U. Pa. L. Rev. 283, (2014). ]This case, like the others before it, demonstrates that the Sixth Amendment is broad and important, as our justice system seeks to give a person every opportunity possible to enjoy the assistance of counsel. [See also FRCP , Rule 44 (a),(b)]

**2.)** The Court in Gideon held that the right to counsel in felony cases was a "fundam'ental" right [ See Id. at 342. Though the Court in Gideon was relying on the -fundamental" right theory, it should be noted that in its decision, the Court declined to draw any arbitrary distinction between capital and non-capital criminal offenses. As will be seen, the Court has consistently avoided drawing any such lines in right to counsel cases. See note 6 infra.

**3.)** Courts, including the Supreme Court, have applied the right to appointed counsel requirements in situations which the average layman might consider outside the criminal arena, but which are viewed as otherwise by the judiciary. In In re Gault, 387 U.S. 1 (1967), the Court was faced with a delinquency proceeding. Though clearly not in the nature of what is usually deemed criminal, the Court, on the theory that a proceeding to determine delinquency could result in certain curtailments of freedom by commitment to an institution, found that due process required both the child and the parents to be notified and the child to be represented by counsel, appointed If necessary. Id. at 41.

**4.)** While freedom is curtailed in these delinquency proceedings by commitment in an institution, it is submitted that freedom can also be curtailed in other ways, both economically and socially, without actual physical restraint. See Goodpaster, The Integration of Equal Protection, Due Process Standards,

-6-

and the Indigent's Right of Free Access to the Courts, 56 Iowa L. Rev. 223, 248 (1970). A criminal defendant's <u>Sixth Amendment</u> right to assistance of counsel has been extended by the U.S. Supreme Court to include representation during the "first appeal" [ A filed writ of habeus corpus after counsel had been refused and denied for a post criminal appeal] "after conviction".

    **5.)** Y continues to show where RELIEF has been made in this request , a very reasonable request of accommodation[appointment of counsel and intervention] so that he is not forced or coerced into communications that would in fact trigger his disability due to these stressful processes he having to incur in light of other unfavorable inhumane treatment. It continues to be shown where many entities may State they can leave barriers that cause harm to Y , while Y has in fact has and continues to oppose being subjected to something that does trigger his disability and causes harm. Under the ADA it does allow accommodation for these barriers and access to services. How can one person state no X doesn't have to comply with A's rights and "PROTECTIONS" under the law and X may subject Y to a very offensive intimidating and unsafe environment for Y to incur. How may one force a disabled person to this very cruel and unusual treatment that does trigger and exacerbate a disability knowing it actually damages and impairs and organ of the body while incurring a protracted loss? To protract to draw out over time.

    **6.)** It continues to be shown where Y continues to request something that is allowed , however many parties refuse this accommodation that if granted would allow civil communications for Y. The ongoing refusal has shown and continues to show that this very denial of "the accommodation" allows many parties to abuse Y for his disability exacerbations because they leave barriers and then these parties use the very exacerbations that also affect Y's speech disorder where he is also shown to be treated less favorable and then ostracized for continuing to speak out about this abuse while further being abused and refused his rights and protections under the law. Would you attack someone for have a seizure they tried to prevent knowing what triggers it and was forced into a situation that did trigger it and then to continue to attack and show anomocity for that very person experiencing the seizure i.e. form of seizure?It continues to be shown how people continue to misconstrue what A is saying due to the communicational barriers regarding "legal matters" and "a disabled man's rights" and then tell others and convince others of how Y is being unproductive and uncooperative and justify refusing "accommodations" and allowing Y to be portrayed in a false light due to his very "actual disability" and the barriers that continue to be shown how others are allowed and use official capacity to deprive anf infringe on ONE's fundamental and constitutionally valid rights.

    **7.)** It has been shown that X feels in their ongoing ubiquitous ACTIONS(, for example: a man in a wheel chair is not allowed to use his wheel chair or other access matters for his disability, it's shown that's very similar to what their doing to Y with his disability and say hey you can't use your wheel chair, cane, crutches, etc and must get up those stairs , etc without assistance of what you actually need living with a disability i.e. handicap.)This furthers shows unequal and unfair treatment to those with mental and cognitive disabilities since access is shown in more favoritism to those who have physical disabilities leaving barriers for those that do have mental and cognitive disabilities. How does that show "equal protections under the law" when MANY PARTIES feel they may force a disabled person to a situation when there is in fact barriers? Apparently THEY don't find it's necessary to accommodate mental or cognitive "Disabled Americans" and can force them to cruel and unusual inhumane situations while attacking the disabled party. It continues to show where X justifies this in THEIR official capacity and judicial functions that allows them to make conflictive actions and statements that infringe upon other laws against the "DISABLED" party experiencing it to further slander and defame them for the adverse reactions many disabled people have to abuse and harm as does any person. ... It continues to be shown a great concern with all the parties involved since they all do in fact communicate in some fashion which shows a conflict of interest where someone has used their position in official capacity to portray Y in a false light that allows many others to do the same and continue to abuse and ostracize him further.

8.) It continues to be shown many of these parties of X have been allowed and convinced they may legally abuse a disabled person and subject one to harm and stress and don't allow accommodations and access to services on direct basis of disability while allowing this to fall through the cracks where X has in fact created a false status quo about Y where he is refused help all around and does exclude him from society by this very isolation where these parties in opposition of disability rights continue to show further loss of trust and malfeasance.

9.) How would one trust someone that is trying to harm you, would you allow someone to knowingly hurt you for their own apathy and animus where many have shown how their jobs and employment justifies them abusing and harming Disabled Americans. How are people allowed to actually harm a person in their jobs and say I'm sorry and continue to allow and subject one to the same ongoing abuse and deprive one of there rights in the process?. Here's the thing would YOU keep playing a game with someone that continues to cheat??? Well in this instance this isn't cheating or a game this a is life of a "disable human being", this is negligence and cruel and unusual treatment for a disabled person to have to incur which is prohibited and very inhumane.

10.) How does this justify the ethics and oaths many take to uphold these laws in their duties and employment justify breaking their ethics, codes of conduct, model code, sworn oaths including (10 U.S.C. 502 "domestic") these matters Y is facing that are in fact domestic problems under the law of the United States......This concern and formal matter is being brought forward in light of ongoing concerns many Disabled Americans face in this country and are shown that speaking out against abuse and a form of bullying against them only allows negation by many PARTIES acting under the color of law to prolong any remedies and recovery for irreparable damages which continues to show no enforcement or protections under the law being upheld except further dissuasion and coerced infringement. This is also a courtesy of Y doing his best to advocate for his very rights to the best of his ability while there are in fact barriers denying full access. This has only given an alleged means of remedy and recovery of damages while relief continues to be shown on Y's behalf since false hope is given and these matters go unaddressed.

11.) Where it has even been shown the right to be heard and access to Courts to exercise that very right infringed upon as well, all the while Y has been attacked for betterment of self in understanding these legal concerns. If the State exists to protect Our rights...Why does the Constitution need to protect Our rights from the State?

12.) Which dictionaries are being used that vary in definition of the source to explain how a disabled person facing a miscarriage of justice may be further deprived Constitutionally valid and fundamental rights by X where these rights where not ever upheld.... Y asks so that the Plaintiff may know and have a means to substantive due process and overall fairness to ensure equal access is being allowed with concerns of further retaliation and harm.[ 28 C.F.R. 35.134 (a) , (b) ]

13.) Attorneys who specialize in certain areas, such as DNA/Forensic evidence, which is the issue in Y"s case and how a DISABLED American can be denied reasonable accommodation and equal access to a Court without the accommodation i.e. an attorney that has been deprived in the very first attempt of an appeal by Y without assistance to ensure a proper defense and rights under the "writ of habeus corpus" that was also refused and infringed upon by the Texas Court of Criminal Appeals[ See WR-83,771-02] after exhausting all resources to hire counsel which did conflict with and infringe other protections(equal access) and laws[ See 42 U.S.C. 407(a)]. Many times the mention of public defender came up and it was Y's responsibility to get that public defender when only a Court can give such refferal. Only an attorney can ensure fairness and to prevent further misconception of a disability by X. [ See The Matthew Shepard and James Byrd Jr. *Hate Crimes* Prevention Act of *2009*, 18 U.S.C. § 249 "actual" or perceived disability] [ See also Title II of the Public service section of the ADA][Also See Tennessee v Lane] How can A provide a proper defense and be allowed the rights to be heard in light of ongoing ubiquitous problems that conflict with the law and rule of law?

14). ADA Title II is a valid abrogation of the 11th Amendment (Tennessee v. Lane, 541 U.S. 509 (2004)) Access to the courts shown being a fundamental right and constitutionally valid. See Tennessee v. Lane, 541 U.S. 509, 522,524,529, 531,534(2004).

## 3. ADA RIGHTS

The United States has a substantial legal interest in the subject matter of the action because it involves claims asserted under Title II of the Americans with Disabilities Act of 1990 and Section 504 of the Rehabilitation Act of 1973. The United States Department of Justice is the agency with primary regulatory and enforcement responsibilities under Title II of the ADA and, as such, plays a unique role in enforcing and interpreting the statute and its implementing regulations on behalf of the broad public interest . It also has a significant interest in enforcing the Supreme Court case, Olmstead v. L.C. , 527 U.S. 581 (1999), which held that unnecessary institutionalization of individuals with disabilities violates the Americans with Disabilities Act and Section 504 of the Rehabilitation Act. Disposition of the action without the United States' participation may impede its enforcement and regulatory interests. Because there are not many cases interpreting Olmstead ,the outcome of this case implicates stare decisis concerns that warrant the United States' intervention.

Disposition of the action without the United States' participation and counsel for Y has impeded on its enforcement and regulatory interests. Because there are not many cases interpreting Olmstead , the outcome of this case implicates stare decisis concerns that warrant the United States' intervention. The United States' interests are not adequately protected by the existing parties to the litigation. Because the United States represents the public interest on a national scale, its interests differ from those represented by private Plaintiffs. The United States must satisfies the requirements for permissive intervention because the action involves the interpretation of statutes that the Attorney General is entrusted by Congress to administer. See Fed. R. Civ. P. 24(b)(2). Y again requests for appointment and assistance of counsel to assist in remedying to violations of the State of Texas'[RELIEF] obligations under Title II of the Americans with Disabilities Act ("Title II" and "ADA"), 42 U.S.C. §§ 12131-12134, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 et seq [ Title II was modeled closely on Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, which prohibits discrimination on the basis of disability in federally-conducted programs and in all of the operations of public entities that receive federal financial assistance. The ADA and Section 504 of the Rehabilitation Act are generally construed to impose the same requirements. See Kemp v. Holder, 610 F.3d 231, 234-35 (5th Cir. 2010). This principle follows from the similar language employed in the two acts. It also derives from the Congressional directive that implementation and interpretation of the two acts "be coordinated to prevent [ ] imposition of inconsistent or conflicting standards for the same requirements under the two statutes." Baird ex rel. Baird v. Rose, 192 F.3d 462, 468-9 (4th Cir. 1999) (citing 42 U.S.C. § 12117(b)) (alteration in original). See also eskey v. Com. of Penn. Dep't of Corrections, 118 F.3d 168, 170 (3d Cir. 1997) ("[A]ll the leading cases take up the statutes together, as we will."), aff'd, 524 U.S. 206 (1998).]

Congress enacted the ADA in 1990 "to provide a clear and comprehensive mandate for the elimination of discrimination against individuals with disabilities."42 U.S.C. § 12101(b)(1). As Congress stated in the Findings and Purposes of the ADA, "historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem." 42 U.S.C. § 12101(a)(2). For these reasons, Congress prohibited discrimination against individuals with disabilities by public entities, including discrimination in the form of segregation. Olmstead v. L.C ., 527 U.S. 581, 588 (1999) Congress sought "clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities," 42 U.S.C. § 12101(b)(2), and

explicitly stated that one of the purposes of the ADA was "to ensure that the Federal Government plays a central role in enforcing the standards established [in the Act] on behalf of individuals with disabilities. . . ." 42 U.S.C. § 12101(b)(3). The United States' prominent enforcement role is reflected in the statutory authorization given the Attorney General to commence a legal action when discrimination prohibited by the ADA takes place. 42 U.S.C. § 12133. The Attorneys General's office for X refused to help Y when contact was made regarding this matter and no access, enforcement , nor accommodation has ever been made. This matter has and continues to interfere with education, housing, employment and has caused irreparable physical harm to a disabled person and actual harm to family members and loss of child, all the while refusing to honor the wrong done by X and many parties through the State and other States that have oversight in Judicial and legislative functions.

## 4. PRAYER AND CONCLUSION

Now comes the Petitioner/ Plaintiff and prays this Court grant this Motion to Intervene and grant appointment of Counsel to represent the Petitioner against Defendants.

THEREFORE, Applicant/Plaintiff respectfully request the Court grant their motion to intervene and grant appointment of counsel[ RELIEF shown ] Furthermore, Applicant/Plaintiff request the Court accept their Complaint shown in this very Motion and attached complaint form order the Clerk to file.

Pursuant to 28 U.S.C. ' 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

"Without prejudice UCC 1.207/1-308"

Mr. Eric J. MAPES
P.O. Box 47181
Indianapolis, IN 46247
(360) 660-8296
mr.e.mapes@gmail.com

**Refferences to parties in above foregoing and aforementioned:**

Plaintiff(s) : Y
Defendants: X
**ADA: Americans with Disabilities Act**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | | |
|---|---|---|
| Mr. Eric J. MAPES | § | |
| Plaintiff(s) | § | Case No.: 7:18-CV-170 |
| V. | § | |
| | § | |
| THE STATE OF TEXAS | § | |
| Defendant(s) | § | |
| | § | |

**MOTION REQUESTING INTERVENTION
AND APPOINTMENT OF COUNSEL**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 12th day of September, 2018, a true and correct copy of Applicants'/Petitioners' *MOTION REQUESTING INTERVENTION AND APPOINTMENT OF COUNSEL*(in Support of "COMPLAINT") and *CERTIFICATE OF SERVICE*(*11 PAGES*) was sent via U.S. Certified Mail as indicated below:

**Certified Mail:**

**U.S. District Clerk's Office**
200 East Wall, Room 222
Midland, Texas 79701

**OFFICE OF THE ATTORNEY GENERAL ( Agency #: 302 )**
P.O. Box 12548
Austin, Texas  78711-2548

Pursuant to 28 U.S.C. ' 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Very Truly

*[signature]*
"Without prejudice UCC 1.207/1-308"
__ Mr. Eric: J. MAPES. __
Pro Se

"CC: Copies on file"                    -11-